# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANTONIO D. WILLIAMS,<br><br>                       Plaintiff,<br>v.<br><br>CORRECTIONAL SERGEANT BENSON, CORRECTIONAL SERGEANT JOHNSON, K. POMPEY, J. BOVEE, and JASON BANZELL,<br><br>                       Defendants. | Case No. 21-CV-667-JPS<br><br>**ORDER** |

Plaintiff Antonio D. Williams, an inmate confined at Racine Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. (Docket #1). This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On May 28, 2021, the Court ordered Plaintiff to pay an initial partial filing fee of $0.80. (Docket #5). Plaintiff paid that fee on July 1, 2021. The

Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #2). He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2. SCREENING THE COMPLAINT

   2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right

was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

At the time of the events underlying this case, Plaintiff was an inmate confined at Dodge Correctional Institution ("DCI") in Waupun, Wisconsin. (Docket #1 at 1). Plaintiff is a practicing Muslim who has "adhered to the tenents [sic] [of the Muslim faith] for over ten years[,] both inside and outside of prison." (*Id.* at 10). As part of his faith, Plaintiff participates in the yearly celebration of Ramadan, during which Muslims fast from sunup to sundown. (*Id.*)

During the 2020 month of Ramadan, Plaintiff alleges that Correctional Sergeants Benson and Johnson (respectively, "Benson" and "Johnson") "chose not to provide [Plaintiff] with [his] morning meals." (*Id.*) This denial of morning meals occurred between May 19 and May 21, 2020. (*Id.*) Multiple times, Plaintiff informed Correctional Officer K. Pompey ("Pompey") that he was not receiving his morning meals, and Pompey "chose not to complete any incident report nor take corrective actions," despite being the direct supervisor of Benson and Johnson. (*Id.* at 10–11; Docket #1-1 at 2). Plaintiff alleges that other prisoners have stated that staff at DCI "hold[] an adverse view of the prisoners who practice the Islamic religion" and often fail to provide Muslim inmates their permissible meals during Ramadan. (Docket #1 at 11).

Because of Benson, Johnson, and Pompey's action, Plaintiff writes that he was unable to consume his morning meals before his daytime fast. (*Id.*) And, because he needed his full evening meal to make up for not having a morning meal, he was unable to participate in acts of charity by sharing his evening meal with others. (*Id.*) In other words, he was required to decide between "the correct practice of his religion or forgoing adequate nutrition." (*Id.*)

On July 21, 2020, Plaintiff filed an administrative complaint with the prison, but he states that Corrections Complaint Examiner Bovee ("Bovee") "chose to reject [Plaintiff's] administrative complaint . . . solely to keep the Plaintiff from filing the lawsuit in the judiciary." (*Id.* at 13; Docket #1-1 at 1–2). Plaintiff appealed Bovee's decision. (Docket #1-1 at 6). This appeal was dismissed as untimely. (*Id.* at 9, 16). Plaintiff alleges that Warden Jason Banzell ("Banzell") and Bovee "chose to mischaracterize the timeframes . . . solely to disallow exhaustion of administrative remedies." (Docket #1 at 13). In other words, Plaintiff alleges that they intentionally miscalculated the dates of his appeals so that they could reject the appeals as untimely and prevent Plaintiff from exhausting his administrative remedies. (*Id.*)

### 2.3 Analysis

#### 2.3.1 First Amendment and RLUIPA – Religious Exercise

Plaintiff's allegations invoke two related protections for religious beliefs. The first is the Free Exercise Clause of the First Amendment, which forbids prison officials from imposing a substantial burden on the free exercise of religion, unless the burden is reasonably related to a legitimate penological interest. *Kaufamn v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). In determining whether prison officials' asserted justification for a burden is

rationally related to a legitimate penological objective, courts consider whether there are alternative means of exercising the right that remain open to the inmate, the impact an accommodation of the asserted right would have on guards and other inmates, and whether there are "obvious alternatives" to the restriction. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

Considering the lenient standard of review applied at the screening stage, the Court finds that Plaintiff's allegations support a First Amendment claim against Benson, Johnson, and Pompey. Plaintiff has alleged that these defendants acted personally to prevent Plaintiff from receiving morning Ramadan meals.[1] Benson, Johnson, and Pompey may argue that there was

---

[1] Pompey may later argue that he cannot be liable for Plaintiff's First Amendment claim as he was merely a supervisor. It is well established that § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under § 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992).

Nevertheless, liability may attach when a prison official "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye" towards another's conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). In such cases, the prison official must act "either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988). Here, Plaintiff has sufficiently alleged that Pompey knew of and turned a blind eye to the ongoing First Amendment violation visited upon Plaintiff by Benson and Johnson. (Docket #1 at 10–11). Plaintiff also alleges that denying prisoners their Ramadan meals is a widely administered practice by the guards at DCI. (*Id.* at 11). *See Gentry*, 65 F.3d at 561 ("Furthermore, we can glean from [the plaintiff's] filings his argument that continued denial of scribe materials was a policy of [the prison's superintendent], at least to the level of turn[ing] a blind eye . . . and perhaps to the level of an actual policy of denial.") (internal quotations and citations omitted). For now, the claim against Pompey will continue.

a compelling interest as to why they took the actions that they did (or even that they did not deny Plaintiff his meals), but that assertion cannot be considered at screening.

The second protection is in the form of a statute, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). RLUIPA offers broader protections than the First Amendment. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). It applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). RLUIPA prohibits the imposition of a substantial burden on an inmate's religious exercise unless the burden furthers a "compelling" government interest and is the "least restrictive" means of doing so. 42 U.S.C. § 2000cc-1(a). However, unlike the First Amendment, RLUIPA only provides for prospective injunctive relief. *West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015).

As to his claim brought under RLUIPA, because Plaintiff is no longer housed at DCI, he cannot secure injunctive relief against Benson, Johnson, and Pompey. His RLUIPA claim is moot. *See, e.g., Bradford v. Kramer*, No. 15-CV-1405-MJR-SCW, 2017 WL 2373441, at *3 (S.D. Ill. Apr. 27, 2017), *report and recommendation adopted*, No. 15-CV-01405-JPG-SCW, 2017 WL 2361153 (S.D. Ill. May 31, 2017) ("Plaintiff['s] . . . claim is also moot without exception. Since he has been transferred from the [state jail] to a federal penitentiary to serve his sentence, there is no longer a live controversy regarding the continued video monitoring of Plaintiff in the jail.").

### 2.3.2   First Amendment – Access to the Courts

Plaintiff alleges that, by intentionally miscalculating the dates of the appeals that Plaintiff attempted to make on his inmate complaint rejections, Bovee and Banzell were able to prevent Plaintiff from fully exhausting his

administrative remedies, thereby intentionally preventing Plaintiff from successfully pursuing a § 1983 claim under the PLRA. Plaintiff couches this claim as a "[c]onspiracy to deny [co]urt ac[c]ess." (Docket #1 at 13).

"The Constitution protects a prisoner's right of access to the courts; state actors must respect that right by not impeding prisoners' efforts to pursue legal claims." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). To bring an access-to-the-courts claim, a plaintiff "must allege that: (1) prison officials failed to help him prepare and file meaningful legal papers and (2) he lost a valid legal claim or defense because of the challenged conduct." *Ware v. Weary*, No. 20-CV-1565-BHL, 2021 WL 148800, at *3 (E.D. Wis. Jan. 15, 2021) (citing *Ortiz* 561 F.3d at 671). As two element two, a plaintiff must allege that he was actually injured. *Ortiz* 561 F.3d at 671.

Here, Plaintiff alleges that Bovee and Banzell have conspired to deny Plaintiff access to the federal courts by prohibiting him from exhausting his claims. "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S. Ct. 910, 921 (2007). Importantly, "[w]hen a prisoner cannot take the required steps to exhaust his administrative remedies . . . because prison officials are interfering, any challenge based on exhaustion is bound to fail." *Spencer v. Sommers*, No. 10-CV-288-BBC, 2011 WL 111581, at *4 (W.D. Wis. Jan. 13, 2011). Thus, in this case, if any defendant later moves for summary judgment based on Plaintiff's failure to exhaust, Plaintiff will have the opportunity to defeat such motion with a sufficient showing that prison officials prevented him from exhausting. At this juncture, Plaintiff's access-to-the-courts claim fails because he cannot allege actual injury. His case may be able proceed even

if he did not exhaust his administrative remedies. Defendants Bovee and Banzell will be dismissed from this action.

### 2.3.3 Negligence

Finally, Plaintiff asserts a common-law negligence claim against Benson and Johnson for failing to bring him his morning meals. To sustain a claim for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). The Court may exercise supplemental jurisdiction over any negligence claims that are related to the federal constitutional violations. 28 U.S.C. § 1367. Here, Plaintiff's negligence claims arise from the same conduct as his First Amendment claims. At the screening stage, Plaintiff has sufficiently alleged a claim of negligence against Benson and Johnson.

## 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Violation of the Free Exercise Clause of the First Amendment by Benson, Johnson, and Pompey; and

**Claim Two**: Negligence by Benson and Johnson.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises

all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants J. Bovee and Jason Banzell be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Correctional Sergeant Benson, Correctional Sergeant Johnson, and K. Pompey;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $349.20 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to

another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

> Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.
>
> Prisoners who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.